**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| BULLBAG CORPORATION, ) | |
|    a Foreign Profit Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:20-cv-2249 |
| v. ) | |
| ) | |
| BAGS O MONEY, LLC, ) | |
|    a Florida Limited Liability Company, ) | |
| BAGS O MONEY, LLC d/b/a BOSS BAGS ) | |
|    a Kentucky Limited Liability Company, ) | |
| MONEY O BAGS, LLC ) | JURY TRIAL DEMANDED |
|    a Kentucky Limited Liability Company, ) | |
| JAMES KRISTOFIK, ) | |
|    an individual, and ) | |
| PAUL MARSHALL, ) | |
|    an individual, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff, Bullbag Corporation ("Plaintiff" or "Bullbag"), pursuant to Fed. R. Civ. P. 65 and L.R. 4.06, respectfully moves this Court for a preliminary injunction ("Motion"), enjoining Defendants, Bags O Money, LLC, Bags O Money, LLC d/b/a Boss Bags, Money O Bags, LLC, James Kristofik, and Paul Marshall, (collectively "Defendants" or individually "Defendant"), from unlawfully using and further infringing on Plaintiff's trademark and patent rights associated with Plaintiff's innovative reusable and foldable dumpster bags. In support of its Motion, Plaintiff states as follows:

**I.       BACKGROUND**

Plaintiff is the inventor and industry leader of the reusable and foldable dumpster bag ("Plaintiff's Bags" or "Bags"). Plaintiff's innovation is the result of years of extensive and expensive research and development. *See* DiSpazio Declaration at ¶ 11. A picture of Plaintiff's Bag is attached hereto as Exhibit A.

Plaintiff's Bags are designed, manufactured, and sold to both contractors and consumers.  Contractors generally purchase directly through Bullbag's sales personnel, while consumers generally purchase through big box retailers (such as Home Depot) or through Bullbag's website.  In the case of contractors, many customers generally sign up for multi-year contracts, providing Bullbag's services (as explained below) over a period of years under a discounted pricing structure.

Plaintiff's Bags are unique in the waste management industry, and are the only bags that include firm and removable rim and corner stays, combined with flexible and durable fabric.  In heavy use, the corner stays are particularly subject to damage.  Through Bullbag's unique approach, the corner and rim stays can easily be replaced and removed to facilitate both relocation of the dumpster bag, and repair without need for a full replacement dumpster.

Other bag-based dumpster products do not use removable stays, and suffer from shortcomings in maintaining the shape of the fabric dumpster while being loaded.  Bullbag's innovative Bags provide a significant competitive advantage based on these and other features.

Bullbag currently sells its bags and services throughout all of the New England states, New York, Florida, and Texas.  Bullbag has generated more than $35 million in revenue from its Bags sales and services.  *See* DiSpazio Declaration at ¶ 12.

Plaintiff's Bags solve a number of significant and serious shortcomings in the waste management industry.   Dumpsters are typically large and cumbersome, requiring heavy

machinery to deliver and remove them.  Softer and more portable bags permit the collection of waste, but do not provide structure or durability to serve a dumpster-like function. Historically, if the bag was light enough to be portable and easily relocatable, it was not durable enough to survive the rigors of contracting, and was difficult to dump and refill.

Bullbag employed Defendant Kristofik as a Florida sales manager from April 2017 through November 2019.  In this position, Kristofik was exposed to Plaintiff's confidential and proprietary information and, upon his departure, took with him certain materials and supplies belonging to Plaintiff, including confidential client information.  Kristofik was fully aware of the extensive time, money, and resources that Plaintiff invested in the research, development, and marketing of its proprietary Bags.  *See* DiSpazio Declaration at ¶ 13.

Upon termination of his employment from Plaintiff in November 2019, Kristofik partnered with Paul Marshall ("Marshall") and the two (2) formed the corporate Defendants. *See* DiSpazio Declaration at ¶¶ 14-15.  On or around June 2020, Kristofik and Marshall contracted with third-party manufacturer, JohnPac, LLC ("JohnPac").  Kristofik took Plaintiff's stolen materials and supplies, and importantly, Plaintiff's Bags, to JohnPac and asked it to manufacture an identical one.  *See* Exhibit F, Letter from JohnPac to Plaintiff.

Defendants asked JohnPac to manufacture 1,400 identical, knock-off bags which is evidenced by the invoice for the order attached as Exhibit B.  As shown, the bags were paid by Marshall in Kentucky and delivered to Kristofik in Florida. Thereafter, Defendants used Plaintiff's knock-off bags and confidential customer lists/contact information, that Kristofik gathered while working for Plaintiff, to target Plaintiff's existing customers—customers that Kristofik knew had signed up for multi-year service agreements with Plaintiff—in order to persuade them to terminate their existing agreement and switch to Defendants' infringing

enterprise.    Attached as Exhibit C is a side-by-side comparison of Plaintiff's Bags to Defendants' infringing knock-off bags.  As a result of Defendants' interference with Plaintiff's customers, Plaintiff has lost, at a minimum, $50,000 in revenue. *See* DiSpazio Declaration at ¶¶ 17-21.

In addition to replicating Plaintiff's Bag design and structure, Defendants have also usurped Plaintiff's unique branding mechanisms.  First, Defendants chose a brand name that is certain to cause consumer confusion.  The name "Boss Bag" has the same number of letters as "Bull Bags," the same alliteration of the letter "B," and presents a similar impression for consumers in terms of association, appearance, and meaning. Plaintiff is already aware of actual confusion among consumers, namely Paul Davis of Hernando and Pasco County, Rapid Response Orlando, Roto Rooter Orlando, Sunshine Contractors, and Jenkins Restorations. *See* DiSpazio Declaration at ¶ 26. The confusion, unfortunately, does not come as a surprise as Defendants have blatantly sought to capitalize on Plaintiff's substantial goodwill and valued reputation.

Additionally, Defendants have mimicked other unique features of Plaintiff's Bag, including fill lines on the outside of the bags. While this imitation may appear insignificant, it is not.  Plaintiff developed this innovative idea in order to allow customers to save costs by only paying for what they need.  For example, if a customer is only going to use half of a bag, the customer can pay a lower price for waste removal than a customer paying for a full bag. This innovation is unique in the industry as other dumpster bags are only one-size and not reusable. *See* DiSpazio Declaration at ¶ 19.  Defendants not only took this innovation, but also took Plaintiff's pricing model and are using a similar pricing structure to undercut Plaintiff in the marketplace. *Id*. at ¶¶ 23-24.

Based on at least the foregoing, Plaintiff brings this Motion in order to enjoin Defendants from further manufacturing, using, marketing, offering to sell, or selling its knock-off reusable waste bags and to cease using branding that is confusingly similar to Plaintiff's trademarks. Plaintiff has been, and will continue to be, subjected to irreparable harm for which there is no adequate remedy at law, unless and until this Court provides the requested injunctive relief.

## II.    LEGAL STANDARD

The grant of a preliminary injunction rests in the discretion of the district court. *Canal Auth. Of the State of Fla. v. Callaway*, 489 F. 2d 567, 572 (5th Cir. 1974). The district must exercise its discretion in light of the "four prerequisites for the extraordinary relief of preliminary injunction." *Id*. The four prerequisites that Plaintiff must establish are: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) that the harm suffered by Plaintiff in the absence of an injunction would exceed the harm suffered by Defendants if the injunction is not issued; and (4) that an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F. 3d 1242, 1246-47 (11th Cir. 2002). *See also E. Martin & Co. v Shaw-Ross Int'l Exports*, 756 F.2d 1525, 1530, n. 13 (11th Cir. 1985); *Tally-Ho, Inc. v. Coast Community College Dist.*, 899 F.2d 1018, 1022 (11th Cir. 1989); *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1354 (11th Cir. 1983). Of the four elements required to obtain injunctive relief, the likelihood of success on the merits is the most important. *Schiavo v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005), *aff'd*, 403 F.3d 1223 (11th Cir. 2005). Plaintiff need only show likelihood of success, not certain success, which is satisfied if Plaintiff demonstrates a "substantial case on the merits." *Id*.

This Court has previously recommended that a preliminary injunction be issued when defendants' clubs were nearly identical to plaintiff's clubs. *Calloway Golf Co. v. Golf Clean, Inc.,* 915 F. Supp. 1206 (M.D. Fla. 1995). This Court has also entered a preliminary injunction to protect plaintiff's legitimate business interests when former employee used information he learned while working for former employer at his new business. In this case, the record indicated that during employee's time at former employer's company, employee acquired confidential proprietary business information of the company's methods, techniques, specifications, efficiencies, materials, and equipment and that he took this information with him, both literally and figuratively, to start up his new company. *MicroLumen, Inc. v. Allegrati*, 2007 WL 9757950, at *11 (M.D. Fla. Aug. 31, 2007).

In *Stoneworks Inc. v. Empire Marble & Granite Inc.,* the Southern District granted plaintiff's motion for a preliminary injunction where defendant's medallion was virtually identical—to the thousandths of the inch—to that of plaintiff's.  There was also testimony that defendant was not capable of creating intricate stone designs, such as plaintiffs, until the arrival of plaintiff's former employee. *Stoneworks Inc.,* 1998 WL 998962, at *2 (S.D. Fla. Nov. 20, 1998). Further, the Southern District has found that a plaintiff was entitled to a preliminary injunction based upon its claim of unfair competition, in view of evidence that defendant's device was virtually identical to plaintiff's in appearance and in view of proof of irreparable harm. *Teledyne Indus., Inc. v. Windmere Prod., Inc.,* 433 F. Supp. 710 (S.D. Fla. 1977). Lastly, in *Bert Lane Co. v. Int'l Indus.,* the Florida Supreme Court explained that a complaint seeking to enjoin former employees from using, to their own advantage and plaintiffs' detriment, information obtained in course of employment to manufacture a device identical with that of

plaintiff's stated a cause of action for some equitable relief. *Bert Lane Co.,* 84 So. 2d 5 (Fla. 1955).

### III.   ARGUMENT

#### A.  Plaintiff has a substantial likelihood of success on the merits of its claims

##### 1.   Count I - Federal Trademark Infringement

The Lanham Act provides liability for trademark infringement, if without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). A plaintiff must demonstrate: (1) ownership of the trademarks at issue; (2) the defendant's use of the trademarks is without the plaintiff's authorization; and (3) the defendant's use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of defendant's goods. *Id.*

Plaintiff has a high likelihood of success as it easily satisfies all three (3) required elements. First, Plaintiff's trademarks ("Marks") are federally registered and entitled to protection under both federal and common law. *See* Exhibits D-J of Complaint. *See also* DiSpazio Declaration at ¶ 6.

A federal registration on the Principal Register of the United States Patent and Trademark Office ("USPTO") is *prima facie* evidence of the validity of the registered trademark and of the registration of the trademark, of the registrant's ownership of the trademark, and of the registrant's exclusive right to use the registered trademark in connection with the goods and services recited in the registration.  *See* 15 U.S.C. § 1057(b), 1115(a).  Once registered for five (5) years, a federal trademark registration becomes "incontestable" and is "conclusive evidence of the validity of the registered mark, of the registrant's ownership of the mark, and of the registrant's exclusive right

to use the registered mark in commerce." 15 U.S.C. § 1115(b).  An incontestable registration may only be cancelled under limited circumstances.  *Id*.

A federal trademark registration provides nationwide constructive priority of use.  15 U.S.C. § 1057(c).  *See generally Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010); *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 115 (5th Cir. 1966).  Registration also constitutes constructive notice of nationwide priority.  15 U.S.C. § 1072.  *See generally Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 199-200 (1985); *John R. Thompson Co.*, 366 F.2d at 115; *Faciane v. Starner*, 230 F.2d 732, 738 n.12 (5th Cir. 1956).

The trademarks at issue are summarized below:

| Reg. No. | Mark | Registration Date | Incontestable |
|----------|------|-------------------|---------------|
| 3,336,770 | BULL BAG | 11/13/2007 | Yes |
| 3,327,153 | BULL BAG | 10/30/2007 | Yes |
| 5,517,315 | YOU FILL IT, WE DUMP IT, YOU KEEP IT | 7/17/2018 | |
| 5,571,904 | BULLBAG WRANGLER | 9/25/2018 | |
| 5,764,122 | BULLBAG | 5/28/2019 | |
| 5,764,123 | THE BULLBAG | 5/28/2019 | |
| 5,852,068 | THE BULL BAG | 9/3/2019 | |

As shown in the table, and through the registration certificates attached to the Complaint, Plaintiff has demonstrated ownership of the asserted marks and, therefore, has satisfied the first element.

Second, Defendants have used a colorable imitation of Plaintiff's Marks to promote sales of its knock-off bags. Plaintiffs have not authorized Defendants use of its Marks.  *See* DiSpazio Declaration at ¶ 6.  Thus, Plaintiff has demonstrated that Defendants' use of its Marks is without authorization and, therefore, has satisfied the second element.

***Likelihood of Confusion***

Regarding the third element, the Eleventh Circuit applies a seven-factor test to determine whether there is a likelihood of confusion. The factors are: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *See Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1313 (11th Cir. 2001). *Parsons v. Regna*, 2020 WL 3266555, at *6 (M.D. Fla. Mar. 20, 2020); *NEXxUS Prod. Co. v. Gentle Concepts, Inc.,* 1993 WL 496824 *4 (M.D. Fla. April 30, 1993). No one factor is dispositive. *See Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1213 (M.D. Fla. 1995) ("The appropriate weight each factor should be given varies with each case.").

### (1) Type (Strength) of Mark

"Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992) (citation omitted). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.*

The BullBag® marks are inherently distinctive and strong trademarks.  *See e.g. FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1083 (11th Cir. 2016).

> The more distinctive the mark, the more readily it qualifies for the principal register. The most distinctive marks—those that are "'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent)"—may be placed on the principal register because they are "inherently distinctive."

*United States Patent & Trademark Office v. Booking.com B. V.*, 140 S. Ct. 2298, 2302, 207 L. Ed. 2d 738 (2020).  Each of the BullBag registrations are registered on the Principal Register,

because each of the marks is inherently distinctive. *See e.g. Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1347 (S.D. Fla. 2016) ("Registration of a trademark on the principal register of the USPTO is prima facie evidence of validity and establishes a [rebuttable] presumption that the mark is protectible or distinct."); *See also* 15 U.S.C § 1057(b). Because each mark is inherently distinctive, each mark is a strong mark.

Additionally, the '770 and '153 Registrations are each incontestable. Such status further demonstrates the strength of the BullBag® marks. *See Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999) ("…the mark's incontestability serves to enhance its strength.").

## (2) Similarity of the Marks

In comparing marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999). Here, Defendants' BOSS BAG mark is nearly identical to Plaintiff's BullBag® marks in sight, sound, and meaning.

First, Defendants have changed only three (3) letters, changing the word "Bull" to the word "Boss", and pluralized the word "Bag":



Concerning Defendants' "First Change," Defendants change 1 vowel and 2 identical

consonants, resulting in a 4-letter word conveying essentially the same meaning, in the same tone, as Plaintiff's first word "BULL."  Both "BULL" and "BOSS" are single syllabic words. While not identical in meaning, both words convey power and strength.  *See e.g.* Exhibits D and E, Merriam-Webster Dictionary Definitions of "BOSS" and "BULL."

Concerning Defendants' "Second Change," pluralizing a phrase does not extinguish trademark infringement liability.  *See Mushroom Makers, Inc. v. R. G. Barry Corp.,* 580 F.2d 44, 47–48 (2d Cir. 1978) ("since both cases involve trademarks which are merely the singular and plural forms of the same word and substantially identical goods directed at the same market and sold through the same outlets, it is difficult to conceive of any reason to distinguish them. Accordingly, as in *Avon Shoe* we find not only that the products are proximate, but that likelihood of confusion was as a matter of law established.").

The overlap and clear infringement are shown further through the domain Defendants have chosen for their infringing enterprise.  Plaintiff has used its domain "thebullbag.com" since December 20, 2005.   On March 25, 2020, Defendants[1] registered the domain "thebossbags.com" as its domain.  The typographical differences have already been addressed above, but recognizing that consumers and contractors may quickly type in the domain name for their dumpster provider, Defendants have selected the exact same structure, prefacing their infringing domain name with the same article "the" that Plaintiff has used for decades.

Looking at the tagline, Defendants' slogan significantly overlaps with Plaintiff's YOU FILL IT, WE DUMP IT, YOU KEEP IT® Mark.  In addition to infringing the BullBag® marks, Defendants have adopted the logo "YOU FILL IT, WE HAUL IT."

---

[1] Defendants' domain is registered through Domains by Proxy, LLC, a company which provides privacy for domain owners so their specific contact information is not listed in public domain registries.  Plaintiff expects that discovery will confirm Defendants own thebossbags.com domain, which currently markets Defendants' infringing goods and services.

"First Change"          "Second Change"

| YOU | FILL | IT, | WE | DUMP | IT, | YOU | KEEP | IT |
|-----|------|-----|-----|------|-----|-----|------|-----|
| YOU | FILL | IT, | WE | HAUL | IT | | | |

As above, Defendants have made negligible changes.  But Defendants' slogan still presents the same commercial impression in sight, sound, and meaning.  Both phrases start with the identical dominant opening, "YOU FILL IT."  Both phrases use 3-word sentences to suggest what the products provided are, namely dumpsters.

As for the changes, Defendants' first change is simply to replace "DUMP" with a synonym in the waste disposal space, namely "HAUL."  *See* DiSpazio Declaration at ¶ 28. Concerning the second change, Defendants have just left off Plaintiff's closing expression "YOU KEEP IT."  But the phrase's dominance comes from its beginning, so leaving off the trailing comments does not convey a different commercial expression, only that the infringer is using a subset of it.   For example, thinking of GEICO's "15 minutes could save you 15% or more on car insurance," slogan (also protected on the Principal Register through U.S. Reg. No. 3,583,309), a competitor offering the exact same services as GEICO could not simply use the phrase "15 minutes might save you 15% or more" as the overlap is significant enough to show the similarity of the marks.

### (3) Similarity Of The Products The Marks Represent

"The greater the similarity between the products..., the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) (citation omitted).  Defendants are selling the same goods and services that BullBag sells.  *See*

Complaint ¶¶ 31 and 40; *See also* Exhibit C; DiSpazio Declaration at ¶ 23.

### (4) & (5) Similarity of Sales Methods and Customers and Advertising Media

Convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg*, 320 F. Supp. 2d at 1332-33.  Plaintiff and Defendants both advertise and sell their products through their websites, and through the same marketing channels in the same geographic distribution areas within the United States, including the Middle District of Florida. *See* Complaint at ¶ 31.        Defendants are advertising, offering to sell, and selling knock-off products, with the same sales strategies and pricing models as Plaintiff.   *See* DiSpazio Declaration at ¶¶ 23-24.

Both target the same types of customers for the same types of projects.    And since Defendants took Plaintiff's pricing structures, both offer the same services under essentially the same pricing model (although Defendants are underbidding Plaintiff since Defendants did not have the significant come-to-market costs that Plaintiff had to bring these innovative bags to market).

### (6) Defendant's Intent

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999).  While evidence of actual intent can be difficult to obtain, even at the preliminary injunction stage, Plaintiff has sufficient evidence on this record to grant preliminary relief.

First, the manufacturer/importer has stated that it was provided a BullBag® Bag *for the purpose of creating a copy.  See* Exhibit F, November 5, 2020 letter from JohnPac.  There can

likely be no greater evidence of intent at this stage in the proceedings. Additionally, Defendants took products and supplies, including Plaintiff's pricing models and customer-related information. The only conclusion to be drawn is that Defendants intended to capitalize on Plaintiff's extensive and valuable goodwill. *See* DiSpazio Declaration at ¶ 24.

### (7) Evidence of Actual Confusion

Actual confusion is perhaps the greatest harm and danger of trademark infringement, and an objective of a preliminary injunction is to avoid creating the possibility for such actual confusion to arise. Thus, all a plaintiff must establish is a *likelihood* of confusion. *See e.g. Frehling Enters*, 192 F.3d at 1340. Here, even at the early stage of this proceeding, we have evidence of actual confusion. Five (5) separate BullBag® customers have reached out to BullBag asking if Defendants are somehow associated with or affiliated with Plaintiff. *See* DiSpazio Declaration at ¶ 26. While actual confusion is unnecessary, even a single instance of actual confusion is highly probative to a likelihood of confusion finding, as the confused consumers are precisely the harm sought to be addressed through trademark remedies. *See e.g. PlayNation Play Sys., Inc. v. Velex Corp.,* 924 F.3d 1159, 1168 (11th Cir. 2019) ("the number of instances [of confusion] need not be large to be probative of confusion.").

Indeed, in cases like this, where two (2) marks are identical or nearly identical and are used for the same goods, courts have found that a likelihood of confusion is inevitable even if other factors weigh against such a finding. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.") (citation omitted); *see also New W. Corp. v. NYM Co. of Calif.*, 595 F.2d 1194, 1202 (9th Cir. 1979) (holding identical names, products, and distribution areas compelled

conclusion that confusion was likely).

The likelihood of confusion factor weighs solely in Bullbag's favor.  Bullbag has shown a substantial likelihood of success on the merits of its federal trademark claim, and an injunction should issue.

### 2.    Counts II - Federal False Designation of Origin / Unfair Competition

The analysis under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) also turns on whether the relevant consuming public is likely to be deceived or confused by the similarity of the marks at issue.  *New W. Corp.*, 595 F.2d at 1201.  The test remains the same – is there a "likelihood of confusion".  *Id.*  As shown above, Plaintiff is likely to prevail in establishing this likelihood of confusion, Defendants activities also violate 15 U.S.C. § 1125(a).

### 3.    Count III – Unfair Competition

"The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act." *Petmed Express, Inc. v. Medpets.com*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004). Likewise, whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381, 1986 WL 15668, *3 (S.D. Fla. Dec. 9, 1987). Because Plaintiff has made a successful showing under the federal trademark laws, Plaintiff has also shown a substantial likelihood of success on its state claims.

### 4.    Count IV – FDUPTA

"The legal standards we apply to the FDUPTA claim are the same as those we have applied under section 43(a) of the Lanham Act." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (corrections omitted, quoting *Crystal Entm't &*

*Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir.2011).  As above, Plaintiff has shown a likelihood of prevailing on its federal claims, and thus has done so as well for its FDUPTA claim.

### 5.    Count V – Patent Infringement

"[A] preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (internal quotation and citation omitted). The Federal Circuit explained the preliminary injunction standard as follows:

> A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.

*Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Luminara Worldwide, LLC v. Liown Elecs. Co.,* 814 F.3d 1343, 1352 (Fed. Cir. 2016). "Therefore, the plaintiff must show 'whether success is more likely than not' under the Federal Circuit's standard." *InVue Sec. Prod. Inc. v. Vanguard Prod. Grp., Inc.,* No. 8:18-CV-2548-T-33SPF, 2019 WL 4671143, at *2 (M.D. Fla. July 1, 2019), report and recommendation adopted, No. 8:18-CV-2548-T-33SPF, 2019 WL 4673755 (M.D. Fla. Aug. 15, 2019) (quoting *Revision Military*, 700 F.3d at 526.)

A party is liable for patent infringement even if it infringes only a single patent claim. *Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).  "[A] finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).  To prove infringement, "a patentee must either point to specific instances of direct

infringement or show that the accused device necessarily infringes the patent in suit." *Jardin v. Datallegro, Inc.*, 2011 WL 1311732, *2 (S.D. Cal. Apr. 1, 2011) (*quoting ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1313 (Fed. Cir. 2007)).  Where, as here, "accused matter falls clearly within the claim, infringement is made out and that is the end of it."  *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950).

Infringement is not avoided if the accused device has extra parts, ingredients, or steps, respectively, to those claimed.  *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1380-81 (Fed. Cir. 2001); *Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999). An accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.  *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1343 (Fed. Cir. 2001).

As shown in the claim chart attached as Exhibit J to the Complaint, Defendants' infringing bags infringe at least claim 1 of U.S. Patent 10,442,575.  Where the claim language is straightforward, the Court need not engage in claim construction prior to issuing a preliminary injunction.  *See Kristar Enters., Inc. v. Revel Envtl. Mktg., Inc.*, 1999 WL 66135 at *1 (N.D. Cal. Feb. 9, 1999) ("Before the preliminary injunction hearing, the Court determined that a Markman hearing was unnecessary, because the claim language was straightforward and the parties did not appear to dispute the meaning of the terms in any significant way."); *see also. Advantus, Corp. v. T2 International, LLC*, 2013 WL 12122313 at *5 (M.D. Fla. May 30, 2013).

Notably, in response to pre-suit demands that Defendants cease their behavior, at least one (1) Defendant, through counsel, stated that Defendants were in the process of changing the poles used to support Defendants' infringing bags, arguably conceding its infringement.  Plaintiff still needs an injunction; however, as Defendants' marketing still indicates uses of the old stays and

given Defendants' activities to date, Plaintiff cannot rely on Defendants' counsel's statement that one of the Defendants will stop.

### B.  Plaintiff will suffer irreparable harm without an injunction

"[A] sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. App'x., 180, 191 (11th Cir. 2005) (internal quotation marks omitted). A court's finding of "likelihood of confusion" is also sufficient to support a finding of irreparable harm, as the same evidence is likely to support both requirements. *Commodores Entm't Corp. v. McClary*, 648 F. App's 771, 777 (11th Cir. 2016). *See also Express Franchise Sers., L.P. v. Impact Outsourcing Sols., Inc.,* 244 F. Supp. 3d 1368, 1384 (N.D. Ga. 2017) ("Irreparable harm has previously been found to exist based on substantial threat of customer confusion and the resulting harm to the plaintiff's reputation and goodwill" and when plaintiff "is suffering irreparable harm in the form of loss of control of its reputation and goodwill.").

As previously discussed, Defendants' use of Plaintiff's Marks is certain to cause, and already has caused, consumer confusion. Defendants' conduct has confused and misled consumers to believe, in error, that the knock-off bags have been authorized, approved, or sponsored by Plaintiff. Plaintiff should not have to be affiliated, associated, or connected with Defendants in any way. Defects associated with Defendants' products will reflect negatively on Plaintiff and perhaps "taint" Plaintiff's goodwill and reputation. Certainly, Defendants' infringement of Plaintiff's Marks will continue to result in lost sales, lost profits, and lost opportunities for Plaintiff. Trademark Law, in essence, is designed to protect the holder of a trademark. Plaintiff, as such, is entitled to protection and control over the quality of goods associated with its distinctive and unique Marks. In the end, if Defendants' conduct is not

restrained, Plaintiff will suffer substantial and irreparable harm, especially to its business relationships, reputation, goodwill, and Marks.

Concerning Defendants' patent infringement, "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). In addition, "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). Those precise circumstances are present here. Defendants are unlawfully competing against Plaintiff using Plaintiff's patented technology, and charging reduced pricing to undercut Plaintiff. This price erosion, loss of goodwill, damage to Plaintiff's reputation, and loss of Plaintiff's business opportunities are each irreparable harm that must be addressed through a preliminary injunction.

### C. Plaintiff's harm exceeds any harm to Defendants

The threatened harm to Plaintiff—namely, continued harm to its brand and reputation—substantially outweighs any harm to Defendants. Defendants must stop manufacturing, selling, and distributing their knock-off bags. As a result of Defendants' infringing conduct, Plaintiff has lost control of consumer impression over the quality of its Bags. Plaintiff's goodwill and reputation, resultingly, has been affected.

Defendants will probably argue that they stand to lose sales if a preliminary injunction is issued, but this does not constitute a legitimate hardship because Defendants have no right to engage in unlawful conduct and infringing activities in the first place. *See Callaway Golf*, 915 F. Supp. At 1215 (finding that "[a] preliminary injunction will not cause Defendants[] to

suffer any legitimate harm, because they are simply being prevented from selling a product that they are not legally entitled to sell" and that "the balance of the equities weighs heavily in favor of . . . [plaintiff who] faces the risk of injury to its business relationships, reputation and good will."). As such Defendants cannot argue that they would stand to lose profits. Such an argument is without merit. *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982), *cert. denied*, 459 U.S. 880 (1982)). Indeed, it has been repeatedly recognized that "[a]dvantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed." *Id.*

### D.   An injunction would serve the public interest

Florida policy favors the protection of businesses and their trademarks. *Aquent LLC v. Stapleton*, No. 6:13-cv-1889, 2014 WL 117095, *3 (M.D. Fla. Jan. 13, 2014). "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297 (11th Cir. 2001). By enacting the Lanham Act, Congress codified public policy against permitting the use of deceptive and misleading trademarks, thereby protecting both consumers and trademark owners. *See Am. Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n,* 532 F. Supp. 1376, 1389 (S.D. Tex. 1982) aff'd, 701 F.2d 408 (5th Cir. 1983); *Sega Enterprises Ltd. V. Accolade, Inc.*, 977 F.2d 1510, 1530 (9th Cir. 1992), *as amended* (Jan. 6, 1993). As is evident, Plaintiff has invested substantial time, effort, and expense into research, developing, and successfully selling its leading Bags. Likewise, Plaintiff derives significant value from its goodwill.  The public interest, as such, is strongly served by an order that enjoins Defendants from introducing knock-off bags into the marketplace.

### IV.   SECURITY

The Court has broad discretion to set the amount of bond, as well as to waive it entirely where appropriate. *See Carillon Imps., Ltd. v. Frank Pesce Int'l Grp., Ltd.,* 112 F.3d 1125, 1127 (11th Cir. 1997) ("The amount of an injunction bond is within the sound discretion of the district court."); *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Ltd. Liab. Co.,* 425 F.3d 964, 971 (11th Cir. 2005) ("the court may elect to require no security at all") (internal citations omitted).

Here, Defendants have knowingly and intentionally knocked off Plaintiff's Bags, adopted a confusingly similar brand for the purpose of unfairly competing against Plaintiff, and infringed Plaintiff's patent rights. Such conduct is egregious, and no conceivable harm flows to Defendants if they are prohibited from further violating Plaintiff's rights. Plaintiff thus requests the requirement of a bond be waived.

Alternatively, Plaintiff is prepared to give security in the amount of $10,000, or any other amount that the court considers proper, to pay the costs and damages sustained by Defendants in the event Defendants are found to have been wrongfully enjoined. Plaintiff does not oppose the issuance of a bond, but respectfully asks the Court to consider Defendants' willful misconduct when determining the amount of such security.

## V.    CONCLUSION

The Lanham Act exists to protect consumers from confusion and to protect the investment of trademark owners. The Act also protects trademark owners who invest time, money, and energy to build a product's reputation. Here, Plaintiff has satisfied the prerequisites to injunctive relief. Plaintiff, specifically, has demonstrated that it stands to suffer irreparable injury through the sale of Defendants' knock-off bags. Without the requested relief, Plaintiff would be without any remedy to prevent Defendants' infringement of Plaintiff's federally

registered Marks. Plaintiff's injury outweighs any harm to Defendants and the entry of an order enjoining Defendants would serve the public interest.  Similarly, Plaintiff's patent rights are designed to give Plaintiff the ability, for a limited time, to keep others from making, using, selling, offering to sell, and importing infringing devices.  Defendants specifically asked a manufacture to prepare knock-off bags, knowing full well that Plaintiff had secured patent protection on its bags.  This behavior is egregious, and warrants a preliminary injunction.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court (1) grant Plaintiff's Motion for a Preliminary Injunction; (2) enter an order enjoining Defendants, and their agents, servants, employees, and all others acting in connection and/or privity with them, from further manufacturing, using, marketing, offering to sell, or selling its knock-off reusable waste bags and using any mark that is confusingly similar to any of Plaintiff's Marks; and (3) award any other relief that the Court deems just and appropriate.

DATED this 13th day of January, 2021.

/s/ Woodrow H. Pollack
Woodrow H. Pollack
Florida Bar No. 26802
Shutts & Bowen, LLP
4301 W. Boy Scout Blvd.
Suite 300
Tampa, FL 33607
(813) 463-4894
wpollack@shutts.com
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on <u>January 13, 2021</u> a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>*/s/ Woodrow H. Pollack*</u>
Woodrow H. Pollack