IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

---

BULLBAG CORPORATION, )
   a Foreign Profit Corporation, )
 )
Plaintiff, )
 ) Civil Action No. 6:20-cv-2249
v. )
 )
BAGS O MONEY, LLC, )
   a Florida Limited Liability Company, )
BAGS O MONEY, LLC d/b/a BOSS BAGS )
   a Kentucky Limited Liability Company, )
MONEY O BAGS, LLC ) JURY TRIAL DEMANDED
   a Kentucky Limited Liability Company, )
JAMES KRISTOFIK, )
   an individual, and )
PAUL MARSHALL, )
   an individual, )
 )
Defendants. )

---

**DECLARATION OF PAUL DISPAZIO IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

I, Paul DiSpazio, hereby declare as follows:

1. My name is Paul DiSpazio and I am a citizen of the United States of America.

2. I am over the age of eighteen (18) and competent to testify to the matters in this declaration.

3. I make this declaration based on my personal knowledge and, if called to testify as to the truth of the matters declared herein, I could and would competently testify.

4. I am the Chief Executive Officer of Bullbag Corporation ("Plaintiff"). I have over thirty (30) years of waste/trash removal industry experience, mostly in dumpster rental, sales, and service (dumping/removal and related brokerage).

5. Plaintiff is the inventor and industry leader of the reusable and foldable dumpster bag ("Plaintiff's Bags" or "Bags"). Plaintiff's Bags have been sold in the marketplace since as early as November 2003.

6. Plaintiff owns U.S. Patent No. 10,442,575 (the "'575 Patent"). I am the inventor of the '575 Patent. Plaintiff also owns U.S. Trademark Registration Nos. 3,327,153, 3,336,770, 5,517,315, 5,571,904, 5,764,122, 5,764,123, and 5,852,068. Plaintiff has not authorized the use of its patents or trademarks to anyone.

7. Plaintiff has no significant direct competitors. This is largely due to the advantages of Plaintiff's patented bags. For example, Waste Management, Inc./WM Intellectual Property Holdings, LLC Waste Management, Inc. has for many decades been the largest national player in the waste/trash removal industry. Waste Management offers a BAGSTER dumpster bag. The BAGSTER dumpster bag and business model differ in related ways from BullBag's. The BAGSTER bag is small (3 cubic yards), single use, and lacks any form of frame or stays. To use the bag, the user has to roll the sidewall onto itself to be self-supporting at a low height. As the user fills the bag, the user unrolls the sidewall upward. The BAGSTER bag's lack of stays avoids difficult issues of users installing and removing frame elements. It similarly removes issues of breaking frame elements. But it presents other inconvenience of having to roll and unroll the sidewall. Also, the bag is made of lightweight material to facilitate the rolling up. This disfavors reusability.

8. I am not aware of any competitor selling a dumpster bag with stays. Due to my extensive industry involvement and contacts over 3 decades, I would expect to know of such a competitor, if one existed.

9. Bullbag currently sells two versions of its dumpster bag. They differ in the corner stays. Both include rim stays. One version (the consumer version) has bungee poles as corner stays. Another version (the contractor version) has PVC pipe assemblies as corner stays. Consumers purchase extensively at retail (e.g. the Home Depot) or online (e.g., Bullbag's website). Contractors typically purchase directly from Bullbag's sales personnel.

10. Plaintiff's Bags are highly valued and well-known for their uniqueness, quality, performance, and durability.

11. To date, Plaintiff has invested at least $5,000,000 in extensive and innovative research, development, marketing, and advertising. Plaintiff, as such, has acquired substantial goodwill and a prominent reputation within the niche, dumpster bag industry.

12. To date, Plaintiff has generated more than $35,000,000 in revenue from its Bags sales and services.

13. From April 2017 through November 2019, Defendant, James Kristofik ("Kristofik"), was employed by Plaintiff as a Florida Sales Manager. During his employment, Kristofik had access to Plaintiff's confidential and proprietary information.

14. Upon his departure from Plaintiff, Kristofik, without Plaintiff's authorization, took with him Plaintiff's property, including PVC piping, black tent poles, Bags, and marketing materials. Plaintiff believes that Kristofik took customer lists and corresponding price information with him as well.

15. My understanding is that soon after leaving Plaintiff, Kristofik partnered with Bags O Money, LLC, Bags O Money, LLC d/b/a Boss Bags, Money O Bags, LLC, and Paul Marshall ("Marshall) (collectively referred to as "Defendants").

16. Based on public records, I understand Bags O Money, LLC d/b/a Boss Bags, formed on March 11, 2020, is incorporated under the laws of Kentucky. Money O Bags, LLC, formed on June 17, 2020, is incorporated under the laws of Kentucky. Lastly, Bags O Money, LLC, formed on August 10, 2020, is incorporated under the laws of Florida.

17. Upon information and belief, on or around June 2020, Kristofik and Marshall contracted with a third-party manufacturer, JohnPac, LLC, to produce 1,400 identical knock-off bags.

18. I have seen Defendants' infringing bags and they are near identical to Plaintiff's bags. Aside from the markings on the outside, the bags themselves are identical. Defendants' infringing bags even appear to mimic the stitching in Plaintiff's bags.

19. Defendants' infringing bags also copied an innovative idea of providing fill level markings on the outside of the bag. These markings are a significant competitive advantage for Plaintiff. Other dumpster bags only have 1 size and are not reusable. Traditional dumpsters require the customer pay a flat rate plus tonnage, rental, and delivery fees. Because of our unique fill lines, we can price jobs for the customer based on their usage of the dumpster bag.

20. As Plaintiff's former employee, Kristofik knew that Plaintiff's customers are part of a multi-year contract. Kristofik, as a former employee, was under a duty not to disclose such information for his benefit and to Plaintiff's detriment.

21. Notwithstanding the foregoing, Kristofik intentionally and willfully solicited approximately ten (10) to fifteen (15) of Plaintiff's customers. Plaintiff's loss in customers has resulted in approximately $50,000 in lost revenue.

22. Plaintiff's customers regularly agree to multi-year contracts with Plaintiff. Through these agreements, Plaintiff provides reusable dumpster bags and the customer is charged for hauling and dumping of the waste in those bags.  In this way, contractors can get more cost-effective waste removal service than provided by other competitors who must first place large and unwieldy dumpsters.

23. Kristofik was well-aware of this competitive advantage and sales strategy, as he was employed as a sales person for Plaintiff.  Since his departure, he has sought to encourage a number of Plaintiff's customers away from their multi-year contracts with Plaintiff.  The customers he has sought to lure away are largely customers he helped manage the relationship with on behalf of Plaintiff.

24. It also appears that Defendants' pricing structure is identical to that of Plaintiff's. Defendants appear to have also undercut the standard pricing that Plaintiff provides in an effort to steal work away from Plaintiff.

25. While employed by Plaintiff, Kristofik had direct contact with many of Plaintiff's existing customers. Plaintiff believes that Kristofik has now used Plaintiff's price information to undercut Plaintiff's existing customers.

26. Plaintiff, additionally, is aware of actual confusion that has resulted from Defendants' colorable imitation of Plaintiff's Bags. The following customers have expressed confusion between Plaintiff's Bags and Defendants': Paul Davis of Hernando and Pasco

County, Rapid Response Orlando, Roto Rooter Orlando, Sunshine Contractors, and Jenkins Restorations.

27. Plaintiff believes that Kristofik has taken Plaintiff's Bags from Roto Rooter Orlando, or otherwise disposed of them, and instead restocked Roto Rooter Orlando's shelves with Defendants' bags.

28. Based on my thirty (30) years of experience in the waste management industry, we tell clients that we haul, or dump their refuse. Both words convey the same impression to customers.

29. As a direct and proximate result of Defendants' intentional infringements and unlawful conduct, Plaintiff has been, and continues to be, irreparably harmed. If Defendants are permitted to continue using their knock-off bags, infringing brand, and Plaintiff's proprietary pricing structure, damage will continue to flow to Plaintiff, including loss of our goodwill, price erosion, damage to our reputation, and loss of business opportunities.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this ____ day of January, 2021.

_____

Paul DiSpazio, Chief Executive Officer,
Bullbag Corporation